UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| PAUL JOHN BOGENSBERGER, | 4:21-cv-04064-KES |
| Plaintiff, | |
| vs. | ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL |
| USAA CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

**INTRODUCTION**

This matter is before the court on plaintiff Paul John Bogensberger's amended complaint alleging defendant USAA Casualty Insurance Co. ("USAA") breached the terms of its insurance contract, breached its duty of good faith and fair dealing, and engaged in unfair trade practices. See Docket No. 17 at pp. 1, 10-11. Jurisdiction is premised on the diverse citizenship of the parties. 28 U.S.C. § 1332. Now pending is plaintiff's first motion to compel answers to interrogatories and the production of documents. Docket No. 45. The matter has been referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A) and DSD L.R. 72.1(A)(1). Docket No. 56.

## FACTS[1]

Mr. Bogensberger's claims arise from a motor vehicle accident which occurred on June 3, 2019.  While in his vehicle, Mr. Bogensberger was "t-boned" by an uninsured driver who was under the influence of an intoxicating substance.  Docket No. 17, ¶¶ 4, 70-80.  As a proximate result of the accident, Mr. Bogensberger received medical treatment for his injuries and incurred medical expenses.  Id. ¶ 6.  In addition, Mr. Bogensberger's treating surgeon noted that future neck and back surgeries were necessary to correct injuries caused by the accident.  Id. ¶ 22.

When Mr. Bogensberger's claims adjuster initially offered $18,350 for his uninsured motorist ("UM") claim, "she stated that USAA does not consider future medical expenses when surgery is not scheduled for a date certain."  Id. ¶ 26.  In failing to provide Mr. Bogensberger with the full $100,000 limit stipulated in his UM policy for automobile insurance, Mr. Bogensberger brought these claims of breach of contract, insurance bad faith, and unfair trade practices against USAA for, among other reasons, "failing to provide an explanation for its offers," "failing to thoroughly investigate Bogensberger's claim," and "making misrepresentations concerning the availability and conditions of coverage under Bogensberger's claim."  Id. ¶¶ 70-78.

---

[1] For purposes of considering plaintiff's motion to compel, the court takes the facts as asserted in the amended complaint and plaintiff's briefs.  No imprimatur of the court as to their veracity is intended.

Mr. Bogensberger served USAA the set of interrogatories and requests for production pertinent to the instant matter on August 18, 2023.  Docket No. 45 at p. 1.  USAA responded on October 16, 2023.  Docket No. 47-15 at p. 12.  Mr. Bogensberger notified defendant of alleged discovery deficiencies in a letter dated October 17, 2023.  Docket No. 48, ¶ 19; see also Docket No. 48-17 (follow-up email dated October 17, 2023).  After further conferral calls, USAA responded by letter on December 21, 2023, maintaining its objections to the requested discovery items provided in Mr. Bogensberger's August 18th letter.  Docket No. 48, ¶ 25; see generally Docket No. 48-23.  USAA objected to Mr. Bogensberger's requests as not relevant, overly broad, unduly burdensome, not proportional, privileged in part, and unanswerable because the requested discovery does not exist.  Id. at pp. 1-5.

On January 8, 2024, Mr. Bogensberger conceded with USAA that the parties were at an impasse and that he was dissatisfied with USAA's perceived boilerplate objections.  Docket No. 48, ¶ 27; Docket No. 48-24.  On January 18, 2024, after numerous emails were exchanged, the parties met and conferred on the outstanding discovery items without resolution.[2]  Docket No. 48, ¶¶ 29-30.

---

[2] "A party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute." D.S.D. L.R. 37.1; FED. R. CIV. P. 37(a)(1) (requiring a certification that the moving party has in good faith conferred with opposing counsel).  The court finds that Mr. Bogensberger, through the affidavits of his counsel and supporting attachments, has complied with the requirement. See Docket Nos. 47 & 48.  USAA does not dispute compliance.  See Docket No. 52 at pp. 1-2.

3

Mr. Bogensberger filed this motion to compel on January 26, 2024.

Docket No. 45.  It concerns Mr. Bogensberger's interrogatories (3rd set), nos.

18-26 and request for production of documents ("RFP") (4th Set), nos. 31, 33,

52-59, 61, and 64-72.  Id. at p. 1; Docket No. 46 at pp. 25-41.

Mr. Bogensberger indicates in his reply brief that interrogatories nos. 18-21,

24-26 and RFP nos. 31, 33, 52-59, 61, 64, and 69-72 are still at issue.  Docket

No. 54 at pp. 16-27.  Mr. Bogensberger also requests attorney's fees as

recompense for bringing the motion.  Id. at p. 27.

## DISCUSSION

### A. Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the
> scope of discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be
> discoverable.

See FED. R. CIV. P. 26(b)(1).

"An interrogatory may relate to any matter that may be inquired into

under Rule 26(b)."  FED. R. CIV. P. 33(a)(2).  Interrogatories must be answered

unless the opposing party objects stating specific grounds for the objection.  Cf.

id. at (b)(4).  Interrogatories must be proportional to the needs of the case, as

must all discovery requests under Rule 26(b)(1).  FED. R. CIV. P. 33 advisory committee's note to 2015 Amendment.

A party requesting the production of documents "must describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34(b)(1)(A).  The responding party must allow inspection, produce copies, or object and provide a basis for that objection.  Id. at (b)(2)(B)-(C).  "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Id. at (b)(2)(E)(i).  "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."  Id. at (b)(2)(B).

When a party fails to answer an interrogatory or produce materials responsive to a request for production, the party seeking discovery may move the court "for an order compelling disclosure or discovery."  FED. R. CIV. P. 37(a)(1), (a)(3)(B)(iii)–(iv).  The moving party "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)."  Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263-64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).  It then becomes the burden of the party resisting discovery to convince the court that "the discovery is irrelevant or disproportional."  Id. (citations omitted).  If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits.  FED. R. CIV. P. 26(b)(2)(C)(iii).

**B. Disputed Discovery**

Mr. Bogensberger's motion to compel concerns interrogatories nos. 18-21 & 24-26 and RFP nos. 31, 33, 52-59, 61, 64, & 69-72.  The court will discuss first the interrogatories and then the requests for production in the order each was introduced in the briefs.

### 1.    Interrogatory Nos. 17 & 18

Mr. Bogensberger moves to compel USAA's response to interrogatory 17 & 18:

> **No. 17:** Identify the name, address, and position of each person within USAA's Chain of Command concerning claims, from adjuster Stephanie McMullen through the CEO of USAA from January 1, 2019 to the present.

> **No. 18:** State the duties of each person identified in Interrogatory 17 above.

Docket No. 47-15 at p. 1.

In response to interrogatory no. 17, USAA supplied the names, address, and positions of claims personnel within USAA's chain of command, from adjuster Stephanie McMullen through the General Manager of Claims.  Id. USAA objected to responding further with language that the request was not proportional to the needs of the case and was not relevant to the claims and defenses.  Id.  It argued "no one above the Director level was involved in this claim or would need to be involved based on the policy limits at issue."  Id.

In the instant motion and brief in support, Mr. Bogensberger fails to identify any deficiencies in USAA's response.  Docket No. 46 at pp. 39-40; Docket No. 54 at p. 26.  It is not the court's role to find and make that

6

argument.  See Fort Des Moines Church of Christ v. Jackson, 215 F. Supp. 3d
776, 792 (S.D. Iowa 2016) (collecting circuit court opinions).  In the absence of
any cited deficiency, the court must conclude that USAA has satisfied
Mr. Bogensberger's request, rendering his motion to compel a response to
interrogatory no. 17 moot.  Mr. Bogensberger's motion to compel as to
interrogatory no. 17 is denied.

In response to interrogatory no. 18, USAA provided the job duties of
those persons identified in interrogatory no. 17 up through the prior Director of
Claims, Jonathan Barnes, contextualized to the handling of Mr. Bogensberger's
claim.  Docket No. 47-15 at p. 2.  USAA additionally raised the same objections
it used for interrogatory no. 17.  Id.

Mr. Bogensberger states the "duties of claim department personnel in
processing claims, determining how claims are processed, and creating and
enforcing policies and procedures concerning claims" are directly relevant to
bad faith and punitive damages claims.  Docket No. 46 at p. 39.
Mr. Bogensberger argues information about the duties of all chain-of-command
personnel may demonstrate intent to incentivize lower claim payments as part
of USAA's corporate culture.  Id. at p. 40.  Furthermore, Mr. Bogensberger
claims USAA may be maliciously withholding information about job duties
such as training and supervision of claim personnel.  Id.

However, USAA claims it amended its responses to interrogatories nos.
17 & 18 and provided Mr. Bogensberger with information responsive to
interrogatory no. 18 on February 7, 2024 (that is, after plaintiff filed this

7

motion to compel).  Docket No. 52 at p. 22; Docket No. 52-1 at p. 8.

Mr. Bogensberger does not dispute this claim, and he mentions neither

interrogatory no. 17 nor interrogatory no. 18 in his reply brief.  Docket No. 54

at p. 26.

As with interrogatory no. 17, Mr. Bogensberger fails to identify any

deficiencies in USAA's amended response to interrogatory no. 18 in his reply

brief.  Id.  Therefore, this court must conclude that USAA has satisfied

Mr. Bogensberger's request, rendering his motion to compel interrogatory

no. 18 moot.  Mr. Bogensberger's motion to compel as to interrogatory no. 18 is

denied.  The court notes that sanctions may still apply where a party—as USAA

did here—provides requested discovery only after the moving party has filed a

motion to compel.  See FED. R. CIV. P. 37(a)(5).

### 2.    Interrogatory Nos. 19-21 & 24-26

Mr. Bogensberger moves to compel USAA's response to interrogatory nos.

19-21 & 24-26:

> **No. 19:** Identify and explain how USAA defines "losses" as part of its financial reports or accounting requirements.

> **No. 20:** Identify and explain how USAA defines "direct losses" and "indirect losses."

> **No. 21:** Identify and explain how USAA defines "paid losses."

> **No. 24:** Identify and explain how USAA defines "incurred losses" and how incurred losses impact USAA's financial position.

> **No. 25:** Identify and explain how USAA defines "loss recoveries" and how loss recoveries impact USAA's financial position.

> **No. 26:** Identify and explain how USAA defines "total incurred losses" and "incurred expenses" and hose [sic] these impact USAA's financial position.

Docket No. 47-15 at pp. 2-4.

In response to interrogatory nos. 19-21 & 24-26, USAA provided "its general definition for each term." Id.; Docket No. 52 at p. 21. For interrogatories nos. 19, 20, & 26, USAA applied the definitions from Generally Accepted Accounting Principles ("GAAP"). Docket No. 47-15 at pp. 2-4. However, USAA also objected to responding to interrogatories nos. 19-21 & 24-26, arguing they are overly broad. Id.; Docket No. 52 at p. 21. Furthermore, USAA argues these interrogatories seek irrelevant information that is vague and not specific to Mr. Bogensberger's claim or UM claims. Docket No. 47-15 at pp. 2-4; Docket No. 52 at p. 21. USAA also objects to explaining how any of these terms impact its "financial position" using the same "broad" and "vague nature" arguments listed above. Docket No. 47-15 at pp. 3-4.

Mr. Bogensberger argues that "[d]efinitions of these terms are directly relevant to the financial performance of the Defendant, and understanding of financial metrics that are tied to bonus and compensation of claims staff and chain of command personnel." Docket No. 46 at p. 35. "[T]he court has already stated that employee incentive information, if it exists, is relevant and discoverable regarding bad faith claims." Lillibridge v. Nautilus Ins. Co., No. CIV. 10-4105-KES, 2013 WL 1896825, at *12 (D.S.D. May 3, 2013).

Here, Mr. Bogensberger asserts that an understanding of financial metrics is tied to employee incentive information. Docket No. 46 at p. 35. He

9

further contends that definitions in the "abstract" and "GAAP" definitions are not responsive to his request for how *USAA* defines the terms.  Id. Mr. Bogensberger asks the court to order USAA to "supplement its answers to these interrogatories to answer the questions asked."  Id. at p. 36.  USAA claims it responded fully to these interrogatories "to the best of its ability" by providing "its general definition" for each term. Docket No. 52 at p. 21.

USAA contends the broad scope of Mr. Bogensberger's interrogatories invited a broad response from USAA, specifically arguing different terms can have varied meanings in the insurance industry.  Docket No. 52 at p. 21. USAA claims the definitions it provided are "its general definitions" for each term.  Id.  The court agrees.  Mr. Bogensberger cannot argue USAA's responses to interrogatory nos. 19-21 are insufficient solely because the provided definitions are broad or derived from GAAP.

USAA's objection to interrogatory nos. 24-26, claiming the request to explain how specified terms impact its financial position is broad and vague, is sustained; these interrogatories are broad and vague on their face.  Docket No. 47-15 at pp. 3-4; Docket No. 52 at pp. 21-22.  Generally, "[t]he grounds for objecting to an interrogatory must be stated with specificity."  FED. R. CIV. P. 33(b)(4).  "[M]ere conclusory objections that something is overly broad, burdensome, or oppressive, is insufficient to carry the resisting party's burden—that party must make a specific showing of reasons *why* the particular discovery should not be had."  Sprint Commc'ns Co., 316 F.R.D. at 264 (citations and internal quotation marks omitted).  USAA's assertion that

terms can vary in meaning across the insurance industry is a specific reason for this objection.  Docket No. 52 at p. 21.

Mr. Bogensberger has not provided his initial disclosures or a glossary of terms that might clarify the meaning of the phrase, "impacts USAA's financial position."  Docket No. 47-15 at p. 3.  Furthermore, Mr. Bogensberger fails to define this phrase in either his brief or his reply brief.  Docket No. 46 at pp. 35-36; Docket No. 54 at pp. 24-25.  Depending on the context, "financial position" can have more than one meaning.  USAA cannot adequately respond to Mr. Bogensberger's request if the interrogatory is too broad and vague for it to understand what is being asked.

As for interrogatory nos. 19-21, USAA responded to Mr. Bogensberger's requests by supplying its general definitions for the specified terms.  Although USAA provided Mr. Bogensberger with its general definitions for the terms in interrogatory nos. 24-26, its response does not explain how these terms impact USAA's "financial position."  Docket No. 47-15 at p. 3-4.  USAA need not explain how the specified terms in interrogatory nos. 24-26 impact its "financial position" given the broad and vague nature of interrogatory nos. 24-26.  Mr. Bogensberger's motion to compel interrogatory nos. 19-21 & 24-26 is denied.

### 3.    Request for Production Nos. 31 & 61

Mr. Bogensberger moves to compel USAA's response to RFP 31 & 61:

> **No. 31:** Produce all deposition or trial testimony transcripts of any of your officers or any USAA claims personnel in any

extra-contractual suit arising out of the handling of a UI/UIM or bodily injury claim. The scope of this request is January 1, 2017 to present.

**No. 61:** Produce all transcripts of testimony given by any person appointed as corporate representatives of defendant or Rule 30(b)(6) witnesses, or any of the personnel in the Chain of Command in cases involving extra contractual lawsuits arising out of the handling of UI/UIM and bodily injury claims from January 1, 2019 to the present.

Docket No. 46 at p. 25.

USAA produced the prior deposition of Deborah Springer in response to RFP nos. 31 and 61.  Docket No. 47-15 at p. 7.  It indicates Deborah Springer's prior deposition is responsive to these requests.  Docket No. 52 at p. 14.  USAA opposes further production, arguing the requests are not relevant, are unduly burdensome, and are not proportional to the needs of the case.  Docket No. 47-15 at p. 7.  USAA concludes that additional production of deposition transcripts would not be relevant to Mr. Bogensberger's bad faith claim.  Docket No. 47-15 at p. 7; Docket No. 52 at pp. 12-13.

Mr. Bogensberger states the requests are relevant to his bad faith claim against USAA and argues USAA must produce additional discovery items that are responsive to these requests.  Docket No. 46 at pp. 26-27.  Mr. Bogensberger relies on this court's opinion in Rounds v. Hartford to argue that discovery of deposition or trial transcripts is relevant to his bad faith claim.  Id. (citing No. 4:20-CV-04010-KES, 2021 WL 4150838, at *10 (D.S.D. Sept. 13, 2021)).

 " 'Deposition and trial transcripts of any officer, or individual . . . identified in any extra-contractual suit arising out of the handling of [a

12

particular] claim' " can be relevant.  <u>Rounds</u>, 2021 WL 4150838 at *10 (quoting

<u>Leichtnam v. Am. Zurich Ins. Co.</u>, No. 5:15-CV-05012-JLV, 2018 WL 4701353,

at *6-7 (D.S.D. Sept. 20, 2018)).  For deposition and trial transcripts of out-of-

state claims to be relevant here, the claims " 'must share some factual or legal

vector' " with Mr. Bogensberger's claims.  <u>Haukaas v. Liberty Mut. Ins. Co.</u>, No.

4:20-CV-04061-KES, 2022 WL 1719412, at *2 (D.S.D. May 27, 2022) (<u>Haukaas</u>

<u>II</u>) (quoting <u>Lillibridge</u>, 2013 WL 1896825, at *5).

Mr. Bogensberger has limited his requests to "cases involving extra

contractual lawsuits arising out of the handling of UI/UIM and bodily injury

claims."  Docket No. 46 at p. 25.  The requests share factual and legal issues

with the current case.  <u>See</u> Docket No. 17 at pp. 10-11.

USAA argues RFP nos. 31 & 61 are disproportionate and unduly

burdensome because they require a "tedious file-by-file review" of the 404

lawsuits it has already identified.  Docket No. 52 at pp. 12-13.  Courts must

evaluate whether a discovery request is proportional by weighing various

factors: not only the amount of damages at stake, but also the importance of

the interests in the case, the parties' access to relevant information, the parties'

resources, how important the discovery is to the issues, and whether the

burden of producing the discovery outweighs its likely benefit.  <u>See</u> FED. R. CIV.

P. 26(b)(1).

> A party claiming undue burden or expense ordinarily has far better
> information — perhaps the only information — with respect to that
> part of the determination.  A party claiming that a request is
> important to resolve the issues should be able to explain the ways
> in which the underlying information bears on the issues as that
> party understands them.  The court's responsibility, using all the

> information provided by the parties, is to consider these and all the
> other factors in reaching a case-specific determination of the
> appropriate scope of discovery.

FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 Amendment.

"Unless the task of producing or answering is unusual, undue[,] or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." Haukaas II, 2022 WL 1719412, at *4 (quoting Lillibridge, 2013 WL 1896825, at *6) (alteration in original).  The party opposing discovery cannot simply refuse to produce documents based on a boilerplate proportionality objection; it must provide facts demonstrating how the request is disproportionate.  FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 Amendment; see Sprint Commc'ns Co., 316 F.R.D. at 264.

USAA claims the requests create an undue burden because it "does not maintain a database of employee or company depositions."  Docket No. 52 at p. 13.  Furthermore, USAA contends that researching 404 lawsuits would be "incredibly time consuming," be expensive, require a file-by-file review, and likely require contacting defense counsel for most of the cases.  Id. at pp. 13-14.

Mr. Bogensberger argues USAA should be able to perform the necessary searches.  Docket No. 54 at pp. 16-18.  Mr. Bogensberger states that USAA cannot frustrate discovery with its inadequate filing system.  Id. at p. 17; see Haukaas v. Liberty Mut. Ins. Co., No. 4:20-CV-0461-KES, 2021 WL 5416251, at *9 (D.S.D. Nov. 19, 2021) (Haukaas I) ("[P]ermitting a defendant whose business generates massive records to frustrate discovery by creating an

14

inadequate filing system, and then claiming undue burden, would defeat the purpose of the discovery rules.") (citations omitted).  As in Haukaas I, this court finds that USAA's deficient recordkeeping system is not alone a sufficient reason to find RFP nos. 31 & 61 unduly burdensome.  See id. at *10.

The court finds that USAA has not presented facts sufficient to show that RFP nos. 31 & 61 are disproportional to the case.  The court grants Mr. Bogensberger's motion to compel as to RFP nos. 31 & 61.

However, the court notes that the events giving rise to Mr. Bogensberger began June 3, 2019, and RFP no. 31 & 61 seek transcripts of testimony from 2017 (no. 31) or from 2019 (no. 61) to the present.  In the case of RFP no. 31, the request covers a seven-year period of time.  The court finds the five-year period of time requested under RFP no. 61 to be more reasonable.  Therefore, the court modifies its order and requires USAA to produce responsive documents for both RFP nos. 31 & 61 for the five-year period from January 1, 2019, to the present.

### 4.    Request for Production No. 52

Mr. Bogensberger moves to compel USAA's response to RFP no. 52:

**No. 52:** Produce the entire personnel files and human resource files for each person who supervises or supervised Stephanie McMullen or are in the direct Chain of Command above her up to the most senior person in the Chain of Command with authority over claims. This request does not include those persons that have previously been provided. Note: you may redact social security numbers, home street addresses, bank account numbers, or personal health information. If you have other information you would like to redact, please direct a request to Plaintiff's counsel, and agreement will not be unreasonably withheld.

Docket No. 46 at p. 27.

USAA has produced the personnel files for the individuals involved in Mr. Bogensberger's Uninsured Motorist (UM) claim up to the director of claims. Docket No. 47-15 at pp. 1, 4; Docket No. 52 at p. 14.  USAA opposes production of " 'the entire personnel files and human resource files' " in the " 'Chain of Command' " because it believes Mr. Bogensberger seeks information that is not relevant, is not proportional, is overbroad, implicates the right to privacy, and is unduly burdensome to the needs of the case.  Docket No. 47-15 at p. 4; Docket No. 52 at pp. 14-16.  USAA further claims the personnel files of any person above the director level are not relevant because such persons were not involved in Mr. Bogensberger's claim or would need to be involved with the policy limits at issue.  Docket No. 47-15 at p. 4; Docket No. 52 at pp. 14-16.

Mr. Bogensberger argues personnel files are discoverable in bad faith cases.  Docket No. 46 at p. 28.  USAA argues the production of personnel files above the director level would not be relevant to Mr. Bogensberger's bad faith claim.  Docket No. 47-15 at p. 4; Docket No. 52 at pp. 14-16.  USAA relies on this court's opinion in <u>Dziadek v. Charter Oak Fire Insurance Co.</u>, arguing that "the production of personnel files up to the supervisor of the supervisor of the supervisor of the claims handlers is far enough" because Mr. Bogensberger "has no information that anyone above that level had anything to do with [his] claim."  Docket No. 52 at p. 15 (quoting No. CIV 11-4134-RAL, 2014 WL 820049, at *11 (D.S.D. Mar. 3, 2014)).

In <u>Dziadek</u>, the plaintiff requested the production of "personnel files of [insurer's] employees who handled, reviewed, supervised, and/or audited

16

Dziadek's claim, including persons in the chain of command above these individuals up to the head of the claims department." Dziadek, 2014 WL 820049, at *6.  The court cited Rule 26(b)(1) requiring discovery of relevant but inadmissible materials be "reasonably calculated to lead to the discovery of admissible evidence." Id. at *10; FED. R. CIV. P. 26(b)(1) advisory committee's note to 2000 Amendment.

Rule 26(b)(1) has been amended since the Dziadek decision was written, and the above language relied upon for the determination in that case was deleted from the rule.  See FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 Amendment ("[t]he phrase has been used by some, incorrectly, to define the scope of discovery.").  Today, the scope of discovery is limited to the issue of relevancy and the factors that bear on proportionality.  Id.  Since the court's decision in Dziadek was based on a now-outdated version of Rule 26(b)(1), Mr. Bogensberger's RFP No. 52 must be analyzed according to the language of Rule 26(b)(1) as it exists today.

"Personnel files have routinely been held proper subjects of discovery in this district in bad faith cases from the claims handler up to the head of the claims department." Rounds, 2021 WL 4150838, at *4 (citing Hill v. Auto Owners Ins. Co., No. 5:14-CV-05037-KES, 2015 WL 1280016, at *8-9 (D.S.D. Mar. 20, 2015)).  "This court has long held that the evaluations and personnel files of claims adjusters and their supervisors are both 'relevant and discoverable' in bad faith disputes." Stedillie v. Milford Cas. Ins. Co., 4:23-CV-04048-KES, 2024 WL 449630, at *4 (D.S.D. Feb. 6, 2024) (citing Hill, 2015 WL

17

1280016, at *8).  "Such documents can reveal an 'improper corporate culture' that incentivizes the mishandling of a claim." Id. (quoting Hill, 2015 WL 1280016, at *8).

Additionally, in Schultz v Sentinel Ins. Co., the court suggested that incentives and disincentives for claims handlers are likely reflected throughout claims department leadership.  No. 4:15-CV-04160-LLP, 2016 WL 3149686, at *10 (D.S.D. Jun. 3, 2016).  "The higher up the chain of command improper intent is found, the greater the likelihood that the defendant's actions were the result of company policy or custom, which has a direct bearing on punitive damages." Id. (citation omitted).

This discoverable information goes well beyond explicit incentives or disincentives for USAA's claims handlers.  It follows then, that the inspection of evaluations and other pertinent sections of personnel files are relevant to Mr. Bogensberger's bad faith claim and proportional to the needs of the case. Mr. Bogensberger has satisfied his threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1).  See Hofer, 981 F.2d at 380 ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.").

"[T]he burden then shifts to the party resisting discovery to show specific facts demonstrating that the discovery is irrelevant or disproportional." Sprint Commc'ns Co. L.P., 316 F.R.D. at 264 (citations omitted).  In USAA's objection

to RFP no. 52, it fails to provide facts demonstrating how the request is disproportionate.  Docket No. 52 at pp. 14-16.  In <u>Leichtnam</u>, a request for the personnel files of individuals who assessed a plaintiff's file, as well as those in the chain of command up to the Senior Vice-President of Claims, was deemed "reasonable in nature and not overly broad, burdensome, [or] oppressive." <u>Leichtnam</u>, 2018 WL 4701353, at *4.  In <u>Rounds</u>, the court granted a substantively identical request, holding that "upper-level personnel files may shed light on Mr. Rounds' allegations."  <u>See</u> <u>Rounds</u>, 2021 WL 4150838, at *4-5 (granting request to compel production of "(t)he entire personnel files and human resources files for each person that handled or participated in handling or making decisions regarding any aspect of Tim Rounds' claim . . . up to the senior-most person in the chain of command with authority over claims.").

Like in <u>Rounds</u>, Mr. Bogensberger's request for upper-level personal files may shed light on his allegation that incentives to mishandle claims are " 'likely . . . reflected all the way up the chain of command.' "  Docket No. 46 at p. 28 (citation omitted).  This court finds RFP no. 52 is proportional and not overly broad or burdensome.

USAA next argues that providing Mr. Bogensberger with complete personnel files would violate employee privacy.  Docket No. 52 at p. 15.  In his request, Mr. Bogensberger states that USAA may "redact social security numbers, home street addresses, bank account numbers, or personal health information."  Docket No. 46 at p. 27.  Although personnel files often contain sensitive and confidential information, they tend to reveal an insurance

19

company's culture in ways that cannot "be obtained from some other source that is more convenient, less burdensome, or less expensive." Burke v. Ability Ins. Co., 291 F.R.D. 343, 352 (D.S.D. 2013); see FED. R. CIV. P. 26(b)(2)(C)(i). To prevent the disclosure of sensitive and confidential information, our courts have recognized "health care documents, life insurance . . . W-4s, I-9s, retirement account information, information about employees' bank accounts for purposes of electronic deposits, and counseling information regarding employee assistance programs" as sensitive material that need not be produced. Nye v. Hartford Accident & Indem. Co., CIV. 12-5028-JLV, 2013 WL 3107492, at *11 (D.S.D. June 18, 2013) (citations omitted). Mr. Bogensberger is not entitled to this sensitive information. The court also notes that the district court issued a protective order in this case. Docket No. 12. To the extent sensitive information within the personnel files must be disclosed, USAA may treat the documents as directed within the court's protective order.

The court notes that RFP no. 52 contains no time limitations. The court finds that a look-back period of five years is proportional. The scope of this request is from January 1, 2019, to the present. The request is relevant to Mr. Bogensberger's bad faith claim, and USAA has failed to provide any facts demonstrating how the request is disproportionate, overly broad, or burdensome. Therefore, USAA must produce all personnel files for individuals in the chain of command, up to the General Manager of Claims and excluding the sensitive information described above.

20

### 5.     Request for Production No. 53 & 54

Mr. Bogensberger moves to compel USAA's response to RFP 53 &

54:

> **No. 53:** Produce all documents sufficient to show all compensation
> paid to any of the individuals in the Chain of Command, from
> January 1, 2019 to the present.

> **No. 54:** Produce all documents made available to inform any of the
> personnel in the Chain of Command of the manner they can expect
> to earn increases in compensation, or the manner in which they
> are evaluated for compensation. The scope of this request is from
> January 1, 2019 to the present.

Docket No. 46 at pp. 28-29.

In response to RFP no. 53, USAA produced documents related to the

compensation of the adjuster handling Mr. Bogensberger's claim, her manager,

and the "Director of Claims above the adjuster's manager."   Docket No. 52 at

p. 16; Docket No. 47-15 at p. 5.  USAA produced documents in response to

RFP no. 54 detailing potential bonuses for claims personnel and general

compensation increases for Mr. Bogensberger's adjuster based on her

performance review.  Docket No. 47-15 at p. 5; Docket No. 52 at p. 18.

In response to both RFP nos. 53 & 54, USAA opposes production of

information for individuals further removed from Mr. Bogensberger's claim,

arguing it is neither relevant nor proportional to the needs of the case.  Docket

No. 47-15 at p. 5.  Specifically, USAA contends compensation information for

individuals above the director level is irrelevant because those individuals were

not involved in Mr. Bogensberger's claim nor would they need to be based on

the policy limits at issue.  Id.

21

Mr. Bogensberger argues compensation information for individuals above the director level is discoverable in this district in bad faith cases. Docket No. 46 at p. 30; see Rounds, 2021 WL 4150838, at *5 (citation omitted). The court agrees. The court has already overruled USAA's objection to providing documents for individuals above the director level. See discussion *supra* Section B.4. USAA's similar objection to this discovery request is also overruled.

USAA relies on this court's opinion in Nye v. Hartford Accident and Indemnity Co., which limited compensation-related discovery to claims personnel "handling or reviewing Plaintiff's claims" and "claims personnel handling worker's compensation claims." Docket No. 52 at p. 17 (quoting 2013 WL 3107492, at *13). In fact, the moving party in Nye chose to narrow discovery for "Request 8" and "Request 9" in this way. Id. The court limited the remaining requests for compensation information to " 'claims personnel handling worker's compensation claims.' " Id. This court understands that each individual identified by USAA in its response to interrogatory no. 17, up to the "General Manager of Claims," is involved in UM claims handling, albeit indirectly. Docket No. 47-15 at p. 1. Therefore, Nye provides this court with no reason to limit discovery.

Compensation information that "may reveal whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling" is relevant to Mr. Bogensberger's bad faith and punitive damages claims.

Anspach v. United of Omaha Life Ins. Co., No. CIV. 10-5080-JLV, 2011 WL 3862267, at *9 (D.S.D. Aug. 31, 2011).

In Rounds, the court compelled the discovery of documents sufficient to show all compensation paid to any of the individuals that "handled or participated in handling or making decisions regarding any aspect of [the plaintiff's] claim, as well as those persons who supervise those individuals or are in the direct chain of command above them, *up to the senior-most person in the chain of command with authority over claims*." 2021 WL 4150838, at *18 (emphasis added).

For the same reasons stated in Section B.4., this court has previously compelled the discovery of compensation information for the individuals who assessed a plaintiff's file as well as those persons in the chain of command up to the Senior Vice-President of Claims. Leichtnam, 2018 WL 4701353, at *4-5; see discussion *supra* Section B.4.

"It is well established in this district that information about bonuses and increases for upper-level employees is generally discoverable in cases alleging that an insurance company acted in bad faith in denying an insured's claim in violation of South Dakota law." Hurley v. State Farm Mut. Auto. Ins. Co., No. CIV. 10–4165–KES, 2012 WL 1600796, at *4 (D.S.D. May 7, 2012); see also Lillibridge, 2013 WL 1896825, at *11-12 (granting request to compel production for any bonus, compensation, or incentive documents for any "claim personnel," incentive goals and how they relate to manager bonuses, and "[a]ny and all documents which relate to incentives given to claims

examiners or managers" for any reduction in payouts); <u>Kirschenman v. Auto-Owners Ins.</u>, 280 F.R.D. 474, 486 (D.S.D. 2012) (requiring production of information on "all bonus and awards which it made available for any person up the chain of command"); <u>Lyon v. Bankers Life & Cas. Co.</u>, CIV. 09–5070–JLV, 2011 WL 124629, at *9-10 (D.S.D. Jan. 14, 2011) (granting motion to compel request for "[a]ny and all . . . documents that reference bonus programs applicable to any long term care claims department personnel" and for all documents "which inform . . . long term care claim personnel of the manner in which they can expect to get increases in salary, bonuses, or commissions"); <u>Dziadek</u>, 2014 WL 820049, at *12.  In light of these prior holdings, this court finds that RFP nos. 53 & 54 are both relevant and discoverable.

Since USAA does not specify how RFP nos. 53 or 54 are disproportional to the needs of this case, the court will not address proportionality here.  <u>See</u> FED. R. CIV. P. 34(b)(2)(B) advisory committee's note to 2015 Amendment.  As for RFP no. 54, USAA admits to withholding compensation information for specific individuals above the "Director of Claims" level.  Docket No. 52 at p. 18.  However, it argues it should not produce this information since "[Mr. Bogensberger] points to nothing in any of [the requested] documents that demonstrates good cause for further discovery."  <u>Id.</u>  To the contrary, Mr. Bogensberger has pleaded facts sufficient to show good cause for discovery.

Mr. Bogensberger argues compensation records and bonus information concerning management are discoverable because such information shows

incentives and disincentives for denying or delaying claims at the expense of policyholders.  Docket No. 54 at p. 20; see Rounds, 2021 WL 4150838, at *6 ("Further, Mr. Rounds has pleaded facts sufficient to show good cause for this discovery.  Mr. Rounds alleges that compensation and bonus programs operate as an incentive to reduce workers' compensation payments.").

In USAA's response to RFP nos. 53 & 54, it fails to provide this court with any facts explaining how the requests are irrelevant and disproportional. USAA is ordered to produce all compensation documents for individuals in the chain of command up to the "General Manager of Claims," excluding those already provided in response to RFP no. 53.  In addition, USAA is ordered to produce all documents disseminated to personnel in the chain of command, up to the "General Manager of Claims," about how they can earn compensation increases or how they are evaluated.  The scope of this request is from January 1, 2019, to the present and is limited to those individuals "with authority over claims" identified in interrogatory no. 17, up to the "General Manager of Claims."  Mr. Bogensberger's motion to compel RFP nos. 53 & 54 is granted.

### 6.    Request for Production No. 55

Mr. Bogensberger moves to compel USAA's response to RFP 55:

**No. 55:** Produce all documents which would reflect that the amount paid in claims is or has been considered in any manner when evaluating any of the compensation of the personnel in the Chain of Command, whether it be through "recoveries", reduction of reserves, measurement of average paid claim costs, claim closures, reduced loss ratios, reduced combined ratios, underwriting profit, or any other metric related to claim payouts. The scope of this request is from January 1, 2019 to the present.

Docket No. 46 at p. 29.

USAA responded to RFP no. 55 stating no responsive documents exist.  Docket No. 47-15 at p. 5.  Mr. Bogensberger claims he "does not have to accept [USAA's] response" to RFP no. 55 because USAA "refuses to produce any documents as sought in [RFP nos. 53 & 54] concerning the chain of command."  Docket No. 46 at pp. 29-30.

USAA argues it cannot produce documents that do not exist, citing this court's decision in Stedillie v. Milford Casualty Insurance Co.  Docket No. 52 at p. 18 (citing No. 4:23-CV-04048-KES, 2024 WL 449630, at *10 (D.S.D. Feb. 6, 2024)).  The court agrees.  In Stedillie, this court ruled that "[a] request for production under Federal Rule of Civil Procedure 34 cannot require a party to create a document that does not exist."  2024 WL 449630, at *10. (citations omitted).  Mr. Bogensberger's motion to compel RFP no. 55 cannot be granted as there is no indication that the requested documents exist.  CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC, 328 F.R.D. 231, 237 (N.D. Iowa 2018).

Here, Mr. Bogensberger merely infers documents described in RFP no. 55 exist because USAA objected to RFP nos. 53 & 54.  Docket No. 46 at pp. 29-30. This court fails to see how USAA's objection to RFP nos. 53 & 54 constitutes evidence that documents responsive to RFP no. 55 exist.  Mr. Bogensberger's inference that these documents must exist "is not evidence."  See Joint Venture v. Fireman's Fund Insurance. Co., No. 13-CV-4106-CJW, 2017 WL 562418, at *2 (N.D. Iowa Feb. 10, 2017) ("Plaintiff's counsel's adamant assertions that [documents] must exist is not evidence."); Couture v. Anderson, Civ. No. 10–

5026, 2012 WL 369451, at *6 (D.S.D. Feb. 3, 2012) ("A party may not move to compel discovery on the basis of a mere suspicion that the producing party has additional information that it failed to disclose.") (citations omitted).

USAA claims no documents responsive to RFP no. 55 exist. Mr. Bogensberger fails to offer evidence that responsive documents do exist. Therefore, Mr. Bogensberger's motion to compel RFP no. 55 is denied.  Should evidence later surface that confirms Mr. Bogensberger's suspicion that there are documents responsive to RFP no. 55, he may file a subsequent motion with this court.  Furthermore, the court reminds USAA of its continuing duty to supplement earlier discovery responses if it later discovers documents called for by RFP no. 55.

### 7.    Request for Production No. 56

Mr. Bogensberger moves to compel USAA's response to RFP 56:

**No. 56:** Produce all documents relating to goals, targets, or objectives set for any of the individuals in the Chain of Command, or for the team they are part of, or for uninsured motorist claims in general. The scope of this request is from January 1, 2019 to the present.

Docket No. 46 at p. 31.

In response to RFP no. 56, USAA produced documents "related to the goals or objectives set for the adjuster who handled Mr. Bogensberger's claim," "objectives set for USAA claims personnel who adjusted [Mr. Bogensberger's] claim," and "[a]dditional documents regarding the bonus scorecard for adjuster Stephanie McMullen." Docket No. 47-15 at p. 6.  USAA opposes production of responsive

documents "for any of the individuals in the Chain of Command," arguing this request is "unduly burdensome, overbroad, and seeking information that is neither relevant nor proportional to the needs of the case." Docket No. 47-15 at p. 6. The court has already overruled USAA's objection to providing documents for individuals above the director level. See discussion *supra* Section B.4., B.5. USAA's similar objection to this discovery request is also overruled.

Mr. Bogensberger argues documents relating to goals, targets, or objectives set for individuals above the director level are relevant to bad faith claims and are discoverable in this district. Docket No. 46 at p. 31 (citing Leichtnam, 2018 WL 4701353, at *3). Furthermore, he argues incentives to reduce claim payouts or other insurance ratios and claim metrics might be revealed via production of the goals, targets, or objectives of upper-level management. Id. If revealed, he claims these incentives are "directly relevant to [Mr. Bogensberger's] bad faith and punitive damages claims." Docket No. 46 at p. 32.

"Documents referring to goals, targets, or objectives for claim payments are relevant to bad faith claims and are discoverable in this District." Rounds, 2021 WL 4150838, at *7 (citing Lyon, 2011 WL 124629, at *10). In Rounds, this court found a request to produce "all documents relating to goals, targets, or objectives set for any of the individuals" in the "direct chain of command above [those who handled the plaintiff's claim], up to the senior-most person in the chain of command with authority over claims" was not overly broad or

28

vague.  Rounds, 2021 WL 4150838, at *4, 7 (citing Nye, 2013 WL 317492, at *12).  Mr. Bogensberger's RFP no. 56 is substantively identical to the one described above.  Like Rounds, Mr. Bogensberger alleges that this discovery will reveal "incentives to reduce claim payouts or reduce loss ratios or other insurance ratios and claims metrics."  Docket No. 46 at p. 31; see Rounds, 2021 WL 4150838, at * 7 ("Mr. Rounds alleges that this discovery will reveal direct incentives to reduce claim payouts . . . to reduce loss ratio . . . or other claim metrics.").  Just as the court found Round's request was relevant and not overly broad or vague for similar reasons to what Mr. Bogensberger alleges, this court finds RFP no. 56 is not overly broad.  Rounds, 2021 WL 4150838, at * 7 (citing Nye, 2013 WL 317492, at *12).

Furthermore, USAA fails to provide any reasons why Mr. Bogensberger's request is unduly burdensome or not proportional to the needs of the case.  Instead, USAA relies on this court's decision in Clark v. Unum Group, arguing its production of responsive documents up to the "Director of Claims" is consistent with the holding of this case.  Docket No. 52 at p. 19.  In Clark, this court ordered the defendant "to provide responsive documents for *each* employee whose personnel file was ordered to be produced" for a substantively identical request.  No. 4:20-CV-04013-KES, 2022 WL 17251352, at *10 (D.S.D. Nov. 28, 2022) (emphasis added).  Like personnel files, the requested employee incentive information is proportional because it may reveal incentives to mishandle claims that are likely reflected all the way up the chain of command.

Therefore, USAA must disclose all documents relating to goals, targets, or objectives set for the same individuals whose personnel files must be disclosed under RFP. no 52 of this order.  See discussion *supra* Section B.4. The scope of this request is from January 1, 2019, to the present. Mr. Bogensberger's motion to compel RFP no. 56 is granted.

### 8.    Request for Production No. 57

Mr. Bogensberger moves to compel USAA's response to RFP 57:

**No. 57:** Produce all documents relating to efforts to influence or track "recoveries," reduction of reserves, duration of benefits, average claim costs (indemnity), claim closures, loss ratios, combined rations [sic], or underwriting profit for UI/UIM and bodily injury claims from January 1, 2019 to the present. This request does not include documents from individual claims files relating solely to specific individual claimants. This does not include documents that are solely related to efforts to increase sales.

Docket No. 46 at p. 32.

In response to RFP no. 57, USAA responded that no responsive documents exist but made mention of the previously produced documents about the goals, targets, or objectives set for the claims personnel who adjusted Mr. Bogensberger's claim.  Docket No. 47-15 at p. 6.  Mr. Bogensberger claims USAA's response to RFP no. 57 is not a response, for "[USAA] first claim[ed] no documents exist[ed] then refer[red] to discovery that was provided . . . as apparently responsive." Docket No. 46 at p. 32.

As discussed above, USAA cannot produce documents that do not exist. See discussion *supra* Section B.6.  This court will not order it to do so.  The

30

fact that USAA already produced documents potentially responsive to RFP no. 57 when responding to RFP no. 56 does not mean any additional responsive documents exist.

Mr. Bogensberger argues the documents described in RFP no. 57 must exist because insurance is a "highly regulated business where an insurer is required to document these kinds of metrics."  Docket No. 46 at p. 32. However, the court is unable to evaluate the validity of this statement because Mr. Bogensberger fails to provide any sources or evidence that support his claim.  Therefore, Mr. Bogensberger's "adamant assertion" that these documents must exist is not evidence.  See Joint Venture, 2017 WL 562418, at *2.  USAA is reminded that its duty to produce discovery is continuing, and if documents responsive to RFP no. 57 are discovered later, USAA has an obligation to produce them to Mr. Bogensberger.  See FED. R. CIV. P. 26(e)(1). Mr. Bogensberger's motion to compel RFP no. 57 is denied.

### 9.    Request for Production No. 58

Mr. Bogensberger moves to compel USAA's response to RFP 58:

**No. 58:** Produce all documents sufficient to identify all training or educational materials related to handling or supervising or managing UI/UIM and bodily injury claims and made accessible to any of the persons described in the Chain of Command at any time from January 1, 2019 to the present.

Docket No. 46 at p. 33.

In response to RFP no. 58, USAA "previously produced pursuant to the Protective Order the Knowledge Central ("KC") documents available to adjusters handling UM/UIM claims in South Dakota."  Docket No. 47-15

at p. 6.  USAA claims these documents "involve handling UM/UIM or
bodily injury claims generally, as well as those specific to South Dakota
claims."  Docket No. 52 at pp. 19-20.  In addition, it claims "no separate
KCs available exclusively to 'chain of command' employees" exist.  Id. at
p. 20.  USAA opposes production of responsive documents made "after
the date [Mr. Bogensberger] filed this lawsuit," arguing this request is
"irrelevant and disproportionate."  Docket No. 47-15 at p. 6.  USAA states
its coverage decisions occurred prior to this litigation, and it argues it
should not have to produce the "same training materials for a broader,
post-litigation timeframe" without good cause for doing so.  Docket No.
52 at p. 20.

Mr. Bogensberger argues training and educational materials are
discoverable and relevant because they "may demonstrate a company-wide
policy to process claims improperly and unfairly."  Docket No. 46 at p. 33.
Furthermore, he claims training or educational materials made after the filing
of this suit may "demonstrate that [USAA] is continuing to apply improper
policies and procedures to insureds' claims."  Id. at p. 34 (citing Burke, 291
F.R.D. at 358 (D.S.D. 2013) ("The court considers whether an insurance
company repeats its misdeeds as part of a larger pattern or whether its conduct
in the plaintiff's case was a mere mistake.")).  In addition, Mr. Bogensberger
asserts USAA wrongly limited the scope of its answer to the "adjusters handling
UM claims in South Dakota."  Docket No. 54 at p. 23.

"South Dakota District Courts have held that training materials are relevant and subject to discovery." Rounds, 2021 WL 4150838, at *9; Signature Dev., LLC v. Mid-Continent Cas. Co., No. CIV. 11-5019-JLV, 2012 WL 4321322, at *12 (D.S.D. Sept. 18, 2012). USAA objects to the scope of RFP no. 58, arguing production of post-litigation training materials is irrelevant and disproportionate. Docket No. 52 at p. 20. However, this district has compelled discovery of "training materials" over much longer periods of time. Rounds, 2021 WL 4150838, at *9; see Kirschenman, 280 F.R.D. 474, 487 (D.S.D. 2012) (ordering production of pre- and post-litigation training materials over a ten-year period and into the present). Here, Mr. Bogensberger's request extends over a five-year-period. Docket No. 47-15 at p. 6. USAA's argument that Mr. Bogensberger "has not shown good cause for obtaining discovery of the same training materials for a broader, post-litigation timeframe" is misplaced. See Rounds, 2021 WL 4150838, at *9 ("Thus, Hartford's argument that 'plaintiff provides no explanation or argument regarding why eleven years of training material would show such a belief where three years would not,' is misplaced."); see Docket No. 52 at p. 20.

USAA claims in its brief that it responded with "documents that involve handling UM/UIM or bodily injury claims generally, as well as those specific to South Dakota claims." Docket No. 52 at pp. 19-20. According to USAA's Discovery Log, USAA filed a second supplemental response to RFP no. 58 on March 22, 2023, before Mr. Bogensberger filed this motion to compel on January 26, 2024. Docket No. 52-1 at p. 6. On October 16, 2023, USAA

33

responded to RFP no. 58 with "KC documents that involve handling UM/UIM or bodily injury claims generally." Docket No. 52 at p. 19 (cleaned up); see Docket No. 52-1 at p. 6. Based on USAA's discovery log, Mr. Bogensberger cannot assert that USAA limited its answer only to the "adjusters handling UM claims in South Dakota." Docket No. 54 at p. 23. The court finds that USAA responded sufficiently to RFP no. 58 by providing Mr. Bogensberger with "documents that involve handling UM/UIM or bodily injury claims *generally*, as well as those specific to South Dakota claims." Docket No. 52 at pp. 19-20 (emphasis added).

Mr. Bogensberger remarks that USAA "cleverly doesn't say there are no responsive documents concerning chain-of-command personnel." Docket No. 54 at p. 23. However, USAA states in its brief that "there are no separate KCs available exclusively to 'chain of command' employees." Docket No. 52 at p. 20. USAA cannot produce documents that do not exist. See discussion *supra* Section B.6. Mr. Bogensberger provides this court with no evidence when he makes a mere conclusory assertion that an "insurance company the size of USAA cannot credibly assert it has no training and educational documents for chain-of-command personnel." Docket No. 54 at p. 23.

USAA is ordered to produce all responsive documents for RFP no. 58 beyond the litigation start date. The scope of this request is from January 1, 2019, to the present. USAA is reminded that its duty to produce discovery is continuing, and if documents responsive to RFP no. 58 are discovered later, USAA has an obligation to produce them to Mr. Bogensberger. See FED. R. CIV.

P. 26(e).  Mr. Bogensberger's motion to compel RFP no. 58 is granted in part
and denied in part.

### 10.   Request for Production No. 59

Mr. Bogensberger moves to compel USAA's response to RFP 59:

**No. 59:** Produce all guidance, training, or reference materials
made available to any claim personnel related to any obligation to
give deference or consultation to the opinion of claimant's treating
physician when making a determination of injuries. The scope is
from January 1, 2019 to the present.

Docket No. 46 at p. 34.

In response to RFP no. 59, USAA "produced pursuant to the Protective
Order the Knowledge Central ("KC") documents available to adjusters handling
UM/UIM claims in South Dakota."  Docket No. 47-15 at p. 7.  Specifically,
USAA claims in its brief that it produced "all of the guideline and reference
materials available to claim personnel related to handling UM/UIM or bodily
injury claims generally, as well as those specific to South Dakota claims."
Docket No. 52 at p. 21.  USAA opposes production of responsive documents
made "after the date [Mr. Bogensberger] filed this lawsuit[,]" arguing this
request is "irrelevant and disproportionate."  Docket No. 47-15 at p. 7.  USAA
argues "[c]laim handling materials applicable after [Mr. Bogensberger] filed suit
have no bearing on the disputed issues in the case."  Id.  USAA employs the
same argument it used in its objection to RFP no. 58.  Docket No. 52 at p. 20.
The court has already overruled USAA's objection to providing post-litigation
documents.  See discussion *supra* Section B.9.  USAA's similar objection to this
discovery request is also overruled.

Mr. Bogensberger contends that USAA wrongly limited discovery to documents involving the South Dakota claim adjusters who handled his claim and UM claims in general.  Docket No. 46 at p. 34.  In addition to these documents, Mr. Bogensberger requests responsive documents provided to "any" claim personnel, including those in the chain of command.  Id.; Docket No. 54 at p. 24.  However, USAA claims there are "no other responsive documents to produce."  Docket No. 52 at p. 21.

As stated in preceding sections, USAA cannot produce documents that do not exist.  See discussion *supra* Section B.6, B.9.  Apart from post-litigation documents, USAA claims there are "no other responsive documents to produce."  Docket No. 52 at p. 21.  In a conclusory statement, Mr. Bogensberger asserts, "There may well be documents on consideration of an insured's treating physicians' opinions that *are not* provided to lower-level claims staff but *are* provided to others in the chain of command."  Docket No. 46 at p. 34.  The mere possibility that responsive documents "may" exist does not mean that they do, in fact, exist.  This court will not order USAA to produce documents that do not exist.

USAA is ordered to produce any responsive documents for RFP no. 59 beyond the litigation start date.  The scope of this request is from January 1, 2019, to the present.  Apart from post-litigation documents, USAA claims there are no other responsive documents to produce.  USAA is reminded that its duty to produce discovery is continuing, and if documents responsive to RFP no. 59 are discovered later, USAA has an obligation to produce them to

36

Mr. Bogensberger.  See FED. R. CIV. P. 26(e).  Mr. Bogensberger's motion to compel RFP no. 59 is granted in part and denied in part.

### 11.    Request for Production Nos. 69-72

Mr. Bogensberger moves to compel USAA's response to RFP 69-72:

**No. 69:** Produce any document that explains how USAA defines "combined ratio" and how the combined ratio impacts USAA's financial position.

**No. 70:** Produce any document that explains how USAA defines "incurred losses" and how incurred losses impact USAA's financial position.

**No. 71:** Produce any document that explains how USAA defines "loss recoveries" and how loss recoveries impact USAA's financial position.

**No. 72:** Produce any document that explains how USAA defines "total incurred losses" and "incurred expenses" and how these impact USAA's financial position.

Docket No. 46 at pp. 36-37.

USAA objects to RFP nos. 69-72, arguing they are "overly broad," violate "the requirement of reasonable particularity," and impermissibly seek "to impose an undue burden on USAA CIC."  Docket No. 47-15 at pp. 10-11.  Furthermore, USAA contends these requests are "neither relevant to any party's claim or defense nor proportional to the needs of the case."  Id.  However, USAA states it is conducting a reasonable search for responsive documents, "but has not identified any at this time."  Id.  In its brief, USAA asserts that RFP nos. 69-72 are duplicative of interrogatory nos. 23-26 and impose an undue burden.  Docket No. 52 at p. 21.  Also, USAA claims it could only respond to interrogatory nos.

23-26 by internally discussing definitions, not by referencing a document.  Id. at p. 22.

Mr. Bogensberger claims USAA is a large insurer in a highly regulated business; therefore, it "is obligated to have internal policies and definitions of the insurance terms set forth in [RFP nos.] 69-72."  Docket No. 46 at p. 37.

But the court understands USAA's response to mean that no responsive documents exist.  Although Mr. Bogensberger claims USAA is obligated to have internal definitions of the specified terms, this claim is unsupported. Mr. Bogensberger's adamant assertion that these documents must exist is not evidence.  See discussion supra Section B.6.  As USAA correctly states, "[t]he fact that a person answered [interrogatory nos. 23-26] does not mean responsive documents exist."  Docket No. 52 at p. 22.

USAA is reminded that its duty to produce discovery is continuing, and if documents responsive to RFP nos. 69-72 are discovered later, USAA has an obligation to produce them to Mr. Bogensberger.  See FED. R. CIV. P. 26(e). Mr. Bogensberger's motion to compel RFP nos. 69-72 is denied.

### 12.    Request for Production No. 64

Mr. Bogensberger moves to compel USAA's response to RFP 64:

**No. 64:** Produce any document that includes a job description or duties of each person identified in the Chain of Command, including but not limited to the Assistant Vice-President for Claims, General Manager for Claims, Claims Manager, Claim Adjuster, and Claims Director.

Docket No. 46 at p. 39.

In response to RFP no. 64, USAA states it "is conducting a reasonable search for [responsive] documents, but has not identified any at this time." Id.  In its brief, USAA claims it does not have a document listing each job description.  Docket No. 52 at p. 22.  Rather, USAA explains it provided "complete job descriptions" for interrogatory no. 18 by searching an electronic catalog of over "2,800 different jobs." Id. USAA argues that creating a document based on a search directed by Mr. Bogensberger is "unduly burdensome." Id. (quoting Stedillie, 2024 WL 449630, at *10).  "In the interest of compromise," USAA agreed to use the electronic job catalog to create and provide a document limited to the job descriptions produced for (related) interrogatory no. 18.  Id. at pp. 22-23.

Mr. Bogensberger claims USAA includes job duties in its online advertisements for "some" claims personnel, indicating its possession of responsive documents.  Docket No. 46 at p. 40.  He asserts USAA's electronic job catalog is a document under Rule 34.  Docket No. 54 at p. 26.  In accordance with Rule 34, He claims USAA was required to produce this catalog.  Id.  Mr. Bogensberger believes this court should require USAA to produce "any document that describes job duties of all the claim personnel positions set forth in Interrogatory 18." Id.

The job descriptions and duties of the claim personnel identified in RFP no. 64 are relevant for the same reasons set forth for interrogatory no. 18.  See discussion *supra* Section B.1.  As both parties acknowledge, USAA need not

create a document that does not exist, including lists that do not exist.
Stedillie, 2024 WL 449630, at *10 (citing Farmers Ins. Exch. v. West, Civ. No.
11-2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012) ("[I]t
is axiomatic that no party is required to create documents in response to a
Rule 34 request for production of documents."); Dearborn Tree Serv. v. Gray's
Outdoorservices, LLC, CIVIL ACTION NO. 13-cv-12584, 2014 WL 6886407, at
*4 (E.D. Mich. Dec. 4, 2014) ("A request to produce cannot ask the responding
party to create documents, such as lists.")).  However, USAA did provide the
requested "statement of job duties" and "complete job descriptions" in response
to interrogatory no. 18 using the same electronic job catalog Mr. Bogensberger
now wants produced.  Docket No. 52 at pp. 22.

Under Rule 26(b), the court must limit, on motion or on its own, "the
frequency or extent of discovery . . . if it determines that the discovery sought is
unreasonably cumulative or duplicative, or can be obtained from some other
source that is more convenient, less burdensome, or less expensive." FED. R.
CIV. P. 26(b)(2)(C)(i).  Here, USAA already produced the information Mr.
Bogensberger seeks.  Docket No. 52 at p. 22.  USAA sourced its response from
the same electronic job catalog Mr. Bogensberger now wants produced.  Id. at
pp. 22.  Also, it produced this information in a reasonably usable form by
limiting its response to the job descriptions Mr. Bogensberger requested, rather
than the entire catalog of 2,800 jobs.  Id.  Should the court grant Mr.
Bogensberger's request, he would only gain the same information USAA has

already provided.  It is more convenient, less burdensome, and less expensive

for Mr. Bogensberger to rely on USAA's response to interrogatory no. 18.

USAA is not ordered to produce the entire electronic job catalog.

Mr. Bogensberger's motion to compel RFP no. 64 is denied.

### 13.    Request for Production No. 33

Mr. Bogensberger moves to compel USAA's response to RFP 33:

**No. 33:** Produce all documents related to any regulatory
investigations or actions involving your *handling or processing* of
UI/UIM or bodily injury claims.  The scope of this request is
January 1, 2017 to present.

Docket No. 46 at p. 40 (emphasis added).

In its initial response to RFP no. 33, USAA objected to the request

as "not relevant nor likely to lead to the discovery of admissible

evidence."  Id. at p. 40.  In its supplemental response, USAA states it

underwent a "file-by-file review of each market conduct examination"

conducted by a state regulatory agency within the requested timeframe.

Id. at p. 41.  During its search, USAA claims it found no examinations

related to "how USAA CIC *evaluates injuries or damages* in UM/UIM or

bodily injury claims."  Id. (emphasis added).

USAA argues it appropriately limited the scope of

Mr. Bogensberger's request, as this case does not encompass every facet

of how it handles injury claims.  Docket No. 52 at p. 23.  Instead, USAA

argues "the crux of [Mr. Bogensberger's] bad-faith allegations is that

USAA CIC unreasonably failed to include the cost of a potential future

surgery in its settlement offers." Id.  It claims there are no documents that are responsive to this more narrowed request.  Id.

USAA relies on the court's decision in Burke, where the court deemed documents relevant and discoverable if they are related to regulatory complaints that are "factually or legally" similar to the plaintiff's claim.  Id. (citing Burke, 291 F.R.D. at 358).  In that same decision, however, the court granted a similar request to compel "[a]ny and all documents related to actual or proposed regulatory actions related to any Defendant [within the specified timeframe,]" including but not limited to "investigations, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, Corrective Orders, Corrective Action Plans, or any other regulatory action of any kind."  Burke, 291 F.R.D. at 358-59.  Mr. Bogensberger's RFP no. 33 is not as broad.

Mr. Bogensberger argues his RFP no. 33 was limited to " 'documents related to regulatory investigations or actions' and was not limited to 'how USAA CIC evaluates injuries or damages in UM/UIM or bodily injury claims.' " Docket No. 46 at p. 41.  He contends regulatory actions are consistently found to be relevant in South Dakota bad faith cases.  Id.  This court agrees.  See Rounds, 2021 WL 4150838, at *11 ("[Regulatory investigations] [are] relevant for the same reason the information about past bad faith claims against defendants is relevant.") (citations omitted).  Furthermore, Mr. Bogensberger asserts a continuing pattern or practice of bad faith misconduct by USAA "goes directly to [USAA's] intent and knowledge for . . . bad faith" as they relate to

punitive damages.  Docket No. 46 at pp. 41-42.  In one example, Mr. Bogensberger claims that the Virginia Bureau of Insurance found USAA failed to comply with the provisions of Virginia insurance statutes, including "failures to pay uninsured motorist claims properly."  Id. at p. 15; Docket No. 47-17 at p. 6.

In Rounds, the court granted a request substantively identical to RFP no. 33, rejecting the defendant's argument to self-limit the request to actions within South Dakota.  Rounds, 2021 WL 4150838, at *11.  Also, the court held actions outside the State of South Dakota "may tend to show a pattern or practice of business conduct by [a defendant] that shows it denied claims it knew were covered, or that it acted with reckless disregard in denying such claims."  Id. (citation omitted).  This rationale applies here where USAA attempts to limit RFP no. 33 to "how USAA CIC *evaluates injuries or damages* in UM/UIM or bodily injury claims" in bad faith cases. Docket No. 46 at p. 41 (emphasis added).

Mr. Bogensberger's request is limited to "regulatory investigations or actions involving [USAA's] *handling and processing* of UI/UIM or bodily injury claims" and not to how USAA CIC *evaluates injuries or damages* in UM/UIM or bodily injury claims specifically.  Docket No. 46 at p. 40 (emphasis added). According to Mr. Bogensberger, Virginia Bureau of Insurance found "five instances where [USAA] failed to pay an Uninsured Motorist claim properly[,]" and USAA does not refute this assertion.  Docket No. 47-17 at p. 6.

43

Should responsive documents containing similar information exist, USAA has a duty to produce them.  Since Mr. Bogensberger's request is, on its face, relevant and discoverable, USAA cannot exclude a responsive document from production by imposing its own limitations.  See Burke, 291 F.R.D. at 359.

USAA must produce documents that are responsive to RFP 33 as it is written.  The scope of this request is from January 1, 2017, to the present.  Mr. Bogensberger's motion to compel RFP no. 33 is granted.

## C.  Attorney's Fees

Mr. Bogensberger asks the court to award attorney's fees and costs for bringing this motion to compel under FED. R. CIV. P. 37(a)(5).  Docket No. 46 at p. 42.

Under Federal Rule of Civil Procedure 37(a)(5)(A)(ii), this court is prohibited from awarding the movant's attorney's fees when "the opposing party's nondisclosure, response, or objection was substantially justified."  Where, as here, USAA prevailed on a meaningful number of requests, the court finds such substantial justification exists.  See Stedillie, 2024 WL 449630, at *11.  The motion for attorney's fees is denied.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that Mr. Bogensberger's Motion to Compel [Docket No. 19] is granted in part and denied in part in accordance with this opinion. Defendants shall provide, within 21 days of the date of this order, documents responsive to the granted discovery requests.

44

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 15th day of July 2024.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge